*C. Delano,* for the defendant.

## GEORGE T. BOND *vs.* JOHN B. FITZPATRICK.

In a suit against the maker of a promissory note by one who took it overdue, as collateral security for a smaller debt, evidence that the plaintiff's assignor, while holding the note, received money towards its payment, the amount of which is not exactly proved, and, after assigning the note to the plaintiff, declared that it was paid, is competent to prevent a recovery of a greater amount than the plaintiff's own debt; and any payments specifically proved to have been made to such assignor, while he held the note, are admissible in further reduction of the amount to be recovered.

ACTION OF CONTRACT upon a promissory note for $1900, made by the defendant on the 19th of January 1847, payable in two years to George Dwight or order, and by him indorsed in blank. The new trial heretofore ordered (4 Gray, 94) was had in this court at September term 1857 in Hampden before *Thomas,* J., when the following facts were proved :

The note was given by the defendant, being the Roman Catholic bishop of this diocese, in part payment for a church building and land since occupied by the Catholic Religious Society in Springfield, and was secured by a mortgage of the property. The note and mortgage were assigned by Dwight to the Springfield Institution for Savings on the 12th of April 1847, by the Institution to John J. Doherty on the 1st of October 1850, and by Doherty on the 2d of October 1850 to Ephraim W. Bond, under whom the plaintiff claimed. This last assignment was conditioned to be void if Doherty should pay Bond a promissory

note for $1000 given to him by Doherty on the 1st of said October.

The defendant resisted payment, on the ground that Doherty, who was the priest and business agent of the said religious society, had, upon his assignment to Bond, received funds from the society for the payment of the note, sufficient to pay the whole or the greater part of it, and therefore could not negotiate it, when overdue, so as to pass to Bond the right to hold and collect it.

The defendant offered evidence that Doherty, having been appointed priest of the parish in 1848, took upon himself the collection of the pew rents, and raised them about fifty per cent. for the declared purpose of paying off the debt of the church; and proved the increased rate of rents, the number of pews, and that they were generally full for two years succeeding the increase. Several witnesses testified that they paid the increased rents for the two years, (the amount of the increase paid by them being $200,) and that they had seen other persons than those called as witnesses settling their pew rents with Doherty; but could not state the sums paid nor the names of the persons paying. The defendant also proved two collections in the parish by Doherty for the payment of the debt, and proved the payment to him, in this form, of certain specific sums, amounting in all to $133; and, as evidence tending to prove the extent or amount of these contributions, offered to prove that, after announcing the purpose of the contributions, Doherty went in person through the church, which was very full, and obtained contributions from most of the people, and " had a box piled up with bills and silver; " but did not show any specific sums paid, nor the amount of the whole collections.

The defendant also proved, that, on the Sunday after the 2d of October 1850, Doherty announced from the desk in the church, that " the whole debt was paid off from the church."

The judge excluded the evidence offered, except of definite sums; and instructed the jury, that it was not competent for them to infer the payment to Doherty of any other sum or larger amount towards the payment of the debt than the sums specifi-

cally proved; and that the evidence of the announcement made by Doherty on the Sunday after the 2d of October was competent to affect the whole excess of the note above the $1000 due from Doherty to Bond; but in order to give it such effect, they must be satisfied that the announcement thus made was true.

The jury returned a verdict for the whole amount of the note except the payments specifically proved, and the defendant alleged exceptions.

*J. Wells*, for the defendant.

*W. G. Bates*, for the plaintiff.

SHAW, C. J. This case, formerly reported in 4 Gray, 89, again comes before the court, after another trial. The court perceive no occasion to alter or modify any of the opinions therein expressed.

The court then said, substantially, that as Bond, the plaintiff, took this note long after it was overdue, he took it subject to all equities and set-offs, as a note in contemplation of law dishonored. The note had previously come to Doherty, by assignment, though not by indorsement; still such assignment made him holder of the debt; and all sums received by him, whilst so holder of the debt, which in equity and by his relation to others he was properly bound to apply to the payment, must be deemed, as against this plaintiff, to be actual payments on the note; and the declarations of Doherty, whilst he was so holder of the mortgage and debt, were admissible against this plaintiff to prove such payments.

In regard to the subject of damages, we think the directions of the court were not sufficiently explicit, and the verdict for the whole amount of the note was wrong.

It was clearly proved that the plaintiff took this note overdue, and in point of law dishonored; a note for nearly $2000, as collateral security for $1000 only. Having paid value to this amount only, he can recover no more than he has thus paid value for; unless he would be liable over for the difference between what he has thus paid and the original amount of the note. We cannot perceive that any person can have such claim upon him, except Doherty; and if Doherty had no such claim,

then the damage ought at most to have been limited to the $1000 advanced by Bond and interest.

We think therefore that the jury should have been instructed, that if they were satisfied that, whilst Doherty was the holder of the debt, he had received moneys of the church applicable to the payment of the note, though not shown exactly how much, and after he had assigned the debt to Bond as collateral security, Doherty had declared that the debt of the church, meaning this note of Bishop Fitzpatrick, had been fully paid, it would be strong, perhaps conclusive, proof against Doherty that he had no longer any interest in the note, and could claim no surplus of Bond, so that the amount of the sum advanced by Bond would be the utmost limit of the plaintiff's claim against Fitzpatrick, and a bar to any verdict for damages above that sum.

If the jury should find from the evidence, independent of such declaration of Doherty, that he, whilst proprietor of the note, had received from rents, contributions, and otherwise, specifically proved, an amount, leaving a less amount due on the note than $1000, such payments would be regular or actual payments in reduction of the note, and the balance only would be the measure of damages. *Exceptions sustained.*